UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:22-CR-00034-01 (RBW) |
| | ) | |
| AIDEN BILYARD | ) | |
| _____ | ) | |

**DEFENDANT'S MOTION FOR RECALCULATION AND REVISION OF SENTENCE**

NOW COMES Defendant Aiden Bilyard, through undersigned counsel, and pursuant to 18 U.S.C. § 3582(c)(2), hereby moves this Court to reduce his Sentencing Guideline Offense Level calculation by two levels and to revise his sentence because of a lowered U.S. Sentencing Guideline that recently became effective – U.S.S.G. Amendment 821, which the Sentencing Commission has deemed applicable retroactively to sentences previously imposed – allowing this Court to issue a revised, recalculated sentence, effective on or after February 1, 2023.

**BACKGROUND AND PROCEDURAL HISTORY**

1.     On January 6, 2021, at a time when he was just 19 years old, Aiden Bilyard ("Aiden") participated in the transgression of the U.S. Capitol, engaging in activities for which he has since expressed extreme remorse.  Aiden continues to serve a federal prison sentence imposed by this Court because of that activity.

2.     Aiden's federal case began on January 26, 2022, when a federal grand jury in this District returned a nine-count Indictment against him.

3.     On October 20, 2022, pursuant to a plea agreement, Aiden pled guilty before this Court to Count Two of the Indictment, charging him with violating 18 U.S.C. § 111(a)(1) and (b).  Aiden's pre-trial release was immediately revoked at that time,

1

and he has remained in continuous incarceration ever since that date.

4.      Aiden's Presentence Report calculated his Sentencing Guidelines' Total Offense
Level as 23, with a Criminal History Category of I (based on a Criminal History
Score of zero), yielding a Sentencing Guidelines range of 46-57 months.

5.      On or about March 17, 2023, this Honorable Court conducted Aiden's sentencing
hearing.  It adopted the PSR's recommended 46-57 month guideline range, and
later sentenced Aiden to a term of imprisonment 6 months below the bottom of
his range – 40 months of imprisonment.

**ANALYSIS OF THE SENTENCING COMMISSION'S NEW GUIDELINE**

On August 24, 2023, the U.S. Sentencing Commission ("USSC") proposed an
Amendment to the Sentencing Guidelines providing for a two-level offense level reduction in
Sentencing Guideline calculations for defendants who have no prior criminal history points (the
"Amendment").  The Commission gave the Amendment an effective date of November 1, 2023,
and further stated that it would automatically become effective on that date unless Congress took
action to reject the proposal.  Congress did not take any action to reject the USSC's Amendment,
and it therefore has now become effective, rendering the instant motion ripe for filing.

In relevant part, "Part B, Subpart 1 of Amendment 821 creates a new Chapter Four
guideline at §4C1.1 (Adjustment for Certain Zero-Point Offenders) providing a decrease of two
levels from the offense level determined under Chapters Two and Three for defendants who did
not receive any criminal history points under Chapter Four, Part A."  And as Amendment 825,
adding a new Application Note 7 to U.S.S.G. § 1B1.10, clarifies in a "Reasons for Amendment"
section, "The Commission has determined that the targeted changes to the criminal history rules

made in Parts A and B, Subpart 1 of Amendment 821 should be applied retroactively…. In relation to Part A, the Commission determined that the policy reasons underlying the prospective application of the amendment apply with equal force to individuals who are already sentenced."

As previously noted, in Aiden's Final Presentence Report, the Probation Office calculated his criminal history score as zero. PSR ¶ 46. At his sentencing, this Court also adopted the PSR's findings. Thus, Aiden properly should now be deemed eligible for a two-level offense level reduction in his Sentencing Guidelines, which can be applied retroactively.

Pursuant to 18 U.S.C. § 3582(c)(2), when a sentencing range is subsequently been lowered by the Sentencing Commission, this Court "may reduce the defendant's term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable." So this Court's reconsideration in the present context can appropriately be fulsome.

The Sentencing Commission did include a caveat for any court applying this new Amendment retroactively, however: "The court shall not order a reduced term of imprisonment based on Part A or Part B, Subpart 1 of Amendment 821 unless the effective date of the court's order is February 1, 2024, or later." But as noted in Amendment 825's stated "Reasons for Amendment section, "this special instruction does not preclude the court from conducting sentence reduction proceedings before February 1, 2024, as long as any order reducing the term of imprisonment has an effective date of February 1, 2024 or later."

## APPLICATION OF THE NEW GUIDELINE TO AIDEN BILYARD

### A.    Aiden Bilyard's Sentencing Range and Sentence Should be Reduced

As noted, this Court previously gave Aiden Bilyard a sentence six months below the bottom of his 46-57 month Sentencing Guidelines range. After the Sentencing Commission's

new 2-point offense level reduction, his Total Offense Level would be only 21 if he were sentenced today, and his Sentencing Guidelines range would only be 37-46 months.  His current 40-month sentence would thus be a sentence that is 3 months *above* his guideline floor, as opposed to 6 months below it.  That result (eliminating Aiden's downward variance and essentially sentencing him *above* his guideline floor) would not be consistent with the person Aiden Bilyard showed himself to be at his sentencing – a defendant who entered a timely guilty plea, was cooperative and remorseful, and had other mitigators (including his very young age) previously recognized by this Court as justifying a below-guideline-range sentence in this case.

Many other January 6 defendants will be sentenced after today's date – and they will all get the benefit of the Amendment's 2-level "zero criminal history points" reduction that Aiden did not.  If Aiden were being sentenced today, as noted, his proper Guidelines range would be only 37-46 months.  His Sentencing Guidelines range and ultimate sentence should not be determined by *when he got sentenced*, but instead should now be recalculated and revised downward consistent with the Sentencing Commission's current guidance.

### B.    Other Sentencings Since Aiden Bilyard's Sentencing Reveal Disparities Between His Treatment and Similar Defendants

As noted, on October 20, 2022, this Court granted Aiden Bilyard a 6-month downward variance below his Guidelines range, based in part on his young age and immaturity at the time of the January 6, 2021 events.  *Since* Aiden's sentencing, however, events have shown that most other January 6 defendants of a similar age and maturity have received *far greater* leniency.

Perhaps the most comparable January 6 defendant is Bruno Joseph Cua.  Bruno Cua has been described in the press as the youngest January 6 defendant convicted of a felony, while Aiden has been described as the second-youngest.  Like Aiden, Bruno Cuo was convicted of

assault, and his Sentencing Guideline range was the same as Aiden's: 46-57 months. But based in large part on his youth, Bruno Cua was given a prison sentence of only a year and a day. *See United States v. Cua*, Case No. 1:21-cr-107 (RDM).

Comparing the two cases, there is frankly no rational world in which Bruno Cua deserved a roughly 28-month shorter sentence than Aiden Bilyard. Bruno Cua was frankly far less deserving of leniency, as the Government's own Sentencing Memorandum in that case verifies. Unlike Aiden, Bruno Cua urged violence even before arriving on January 6, telling others to bring guns and "storm the freaking senate/house." Unlike Aiden, whose assault involving pepper spraying officers standing several feet away, which occurred only after someone handed him a can as he was being encouraged by the crowd, Bruno Cua brought a can of pepper spray and an ASP baton with him to the event. After being driven to D.C. and dropped off by Trump-activist parents, Bruno Cua pushed his way into the Capitol, overwhelming a police line that was forced to retreat, and he was described by one of those Capitol Police officers as the most aggressive and angriest of the rioters. Once inside, Bruno Cua led others up the steps to the Rotunda, and later pounded and kicked office doors as he walked the Capitol halls, asking where the "swamp rats" were "hiding." When he got near the Senate Gallery, Bruno Cua joined others in an attack on another officer, shoving the officer and wielding his ASP baton to stop the officer from locking doors, thereby forcing a police retreat for the second time that day. Bruno Cua then entered the Senate Gallery, waving his ASP baton in triumph. Bruno Cua later jumped down onto the Senate floor, walked to the dais, and defiantly sat in the Vice President's presiding chair, reclining and put his feet up on the desk; he later asked others to send him a text of those events. He then opened a door so more rioters could enter the Senate floor, and rifled through

the desks of three different Senators (Sens. Grassley, Thune and Feinstein) before leaving. Bruno Cua then went on social media to brag about his Capitol activities ("We made them wish they were in hell") – and even days later, he was neither reflective nor remorseful, but instead talked of "starting the next civil war" or "second Revolution."  He called January 6 the "[b]est day of my life," and said "If Trump doesn't get I[n] we will be back in DC for a blood bath."

Arrested the next month, Bruno Cua (unlike Aiden) acknowledged having deleted some of his social media accounts.  He was never truly remorseful; he never pleaded guilty, and even his stipulated trial was called not a typical stipulated trial, with Bruno Cua ultimately attempting to contest his assault charge.  *See Cua,* Gov't Sent. Memo. at 21 note 5 (Government says "Cua's stipulated trial differs from many (if not all) of the other stipulated trials").  While it is true that Bruno Cua, like Aiden, had no criminal history, press reports revealed Bruno Cua (unlike Aiden) was previously confronted by local police about obnoxious local behavior supporting Trump's candidacy even prior to January 6.  *See* Exhibit A.  The Government's Sentencing Memorandum said "Cua appears to have had every advantage in life," Gov't Sent. Memo. at 31, yet Bruno Cua (unlike Aiden) went online after January 6 to raise $23,485.  The Government sought 57 months of prison for Bruno Cua – far more than it sought for Aiden – but Bruno Cua was sentenced, on or about August 4, 2023, to just a year and a day, nearly *28 months less than Aiden*.[1]

Another notable example of a sentence recently handed down after Aiden was sentenced is *United States v. Isaacs*, Case No. 1:21-cr-28-16 (APM).  William Isaacs, who was 21 years old on January 6, 2021, went to trial with other Oath Keepers and was convicted of all seven counts (including six felonies).  William Isaacs had told others even before January 6 that "Either

---

[1] Despite Bruno Cua's previous confrontation by Milton, Georgia's local police, he technically has no criminal history points.  He is scheduled for release on July 2, 2024, so it is quite possible he may petition his court under Amendment 821 for an additional reduction from his year-and-a-day sentence.

[T]rump crosses the Rubicon or the citizens cross the Delaware." He came armed for battle, and led the charge at various points on January 6. The Government even called William Isaacs the "head of the spear" into the Capitol on January 6. Based on his young age, his ADHD, and autism spectrum disorder, however, William Isaacs got no prison time at all – on or about August 31, 2023, he was sentenced instead to 5 years of probation with 18 months in home confinement.

Another example of a young January 6 defendant sentenced after Aiden is *United States v. Sheppard*, Case No. 1:21-cr-203 (JDB). Alex Sheppard was among the first rioters to enter the Capitol, and he pushed through a police line, banging on office doors until he reached the hallway outside the Speaker's Lobby, and eventually the inner door to the House Chamber. There, he screamed and videotaped members of Congress and staff fleeing before him, mere feet away. Sheppard left only after seeing Ashli Babbitt shot, yelling as he departed, "[T]hey shot a girl for Jeffrey Epstein and Communist China!" In the days that followed, he continued to post threats on social media, posting on Parler that Mike Pence deserved a firing squad. Even after being arrested, Alex Sheppard's pretrial compliance was far from ideal, and included a car crash and arrest for driving under the influence, which he failed to report. The Government said Alex Sheppard continued to post on social media "virtually nonstop—sometimes twenty times or more in a day, to tens of thousands of followers," participating in interviews attacking DOJ, the FBI and others, while continuing to spread false information about the 2020 election. His recorded interviews continued even into 2023, after his jury trial, where he had testified (the Government said falsely) and was convicted of 5 of 6 counts. The Government sought a 37-month sentence, which it explained reflected its "substantial concern that Sheppard's actions on that day may not be his last." Based in part on his youthful age (of 21 on January 6), however, Alex Sheppard was

ultimately sentenced on or about September 8, 2023 to a prison sentence of only 19 months – less than half of what Aiden Bilyard received in the instant case.

Elsewhere, other youthful January 6 offenders also have received considerable leniency – and not merely in sentencing, but even in the charges themselves. Notably, the Government recently dropped a felony charge against Hunter Palm, allowing him to plead guilty to a mere misdemeanor. *See United States v. Palm*, Case No. 1:21-cr-393 (RDM). In his admitted Statement of Offense, Hunter Palm had conceded he was "part of a mob of rioters pushing their way through the Crypt while United States Capitol Police officers attempted to remove them," and that he even entered Speaker Pelosi's suite while others nearby yelled "We're gonna kill her" and "you cunt Pelosi, get the fuck outta here." While there, Hunter Palm admitted sitting at a Pelosi conference table with an open laptop, asking nearby rioters, "Who's good at hacking?" Later, while being interviewed by FBI agents, Hunter Palm also lied and said he had entered the Capitol because he had been "pushed inside" – a blatant lie, refuted by the evidence. Yet Hunter Palm, due to his young age, was not even required to plead guilty to a felony. Other young January 6 defendants have also received similar leniency and avoided having a felony on their record. *United States v. Justin Smith*, Case No. 1:22-cr-157 (RDM); *United States v. Emily Hernandez*, Case No. 1:21-cr-747 (JEB); *United States v. Munn*, Case No. 1:21-cr-474 (BAH).

Obviously, this Court does not control charging decisions. And even with respect to the felony sentences issued by other judges, this Court obviously has no influence over how much mercy they may choose to bestow. To be crystal clear, undersigned counsel is not claiming this Court must do what they did. It is recognized that no two cases are ever exactly the same, and also that each judge ultimately must perform his or her own sentencing analysis to properly

8

satisfy themselves, in their own hearts, that any sentences they impose are fair and appropriate.

All that said, however, 18 U.S.C. § 3553 does specifically direct this Court to consider the goal of avoiding unwarranted sentencing disparities – this is a valid factor, and even a *required* factor for this Court to consider.  Because of that, this Court – in determining its own comfort level with any revised sentence it may impose – should include as a part of that analysis an evaluation of whether Aiden's sentence may now be outside of the emerging mainstream of sentences given to January 6 defendants who were 21 years old or younger.  None of the three felony sentences cited above were available when Aiden was sentenced, but it is now known that Aiden's prison sentence is 28 months longer than Bruno Cua's, 21 months longer than Alex Sheppard's, and 40 months longer than William Isaacs' sentences.  Aiden's 40 months of prison may well be the most severe imposed on any January 6 defendant in the under-21 age category.

This Court itself previously recognized that some measure of leniency was due to Aiden Bilyard at his original sentencing – it gave a 6-month downward variance from his 46-57 month Sentencing Guideline range, which also to be clear, was appreciated.  But other judges have now shown, in the months since Aiden was sentenced, that they are consistently giving far more weight (and larger variances) based on that same consideration. This Court is free to do the same.

Moreover, this Court may also have anticipated that its 40-month sentence imposed may play out differently in practice, since the Court included certain other elements designed to potentially mitigate the harshness of that sentence.  More specifically, this Court included in its Judgment & Commitment Order a recommendation for Aiden to be designated to Butner, North Carolina, about an hour from where his mother lives.  Obviously, that was never a guarantee, but it would have been a mitigator.  Instead, Aiden initially got transferred to USP Allenwood, in

upstate Pennsylvania – where he spent almost a month in a high-security BOP facility hundreds of miles from anyone he knew, terrified and alone.  Aiden then got transferred, but only to nearby FCI Allenwood Low, where he continues to be housed, still many hundreds of miles away from his mother, severely limiting family visits.  This Court's J&C also recommended Aiden for the RDAP program, raising hopes that he might be able to earn his way home sooner. But FCI Allenwood Low has refused to admit Aiden to RDAP, despite his repeated requests.

Despite such challenges, Aiden has maintained an incredibly positive outlook.  This Court may also recall that a similar situation arose for Aiden pre-sentencing:  This Court's detention order had specifically recommended that Aiden be placed at the Northern Neck Jail, due to undersigned counsel's request to separate Aiden from other January 6 defendants who might influence him.  Instead, he was placed at Alexandria Jail, in the same unit as notorious Oath Keeper Stewart Rhodes, who tried to recruit him.  But Aiden resisted then, and he continued to resist such negative influences since then.  He is the opposite of an Alex Sheppard.

Aiden does not come from a politically-strident family like Bruno Cua.  Upon release, Aiden is quite unlikely to offend again, especially with family support that will diminish the likelihood of any return to such activities.  Yes, Aiden did get caught up in an "aggressive male" vision of Trumpism at age 19, after growing up without a father, as Dr. Carol Giunta's report explained at his sentencing.  But Aiden later disavowed all that in this Court, and he has been disavowing it ever since – not just in words, but in actions (e.g., resisting Stewart Rhodes). Aiden's activities at FCI Allenwod Low have been focused on working jobs and taking courses to better himself.  That includes signing up for anger management class and even taking some college courses.  Aiden's mother describes in considerable detail the maturity she has seen her

son Aiden develop since his sentencing, in a letter attached as Exhibit B.  Such post-sentencing conduct can legally be considered, and it is relevant to this Court's sentencing recalculation. Aiden also has a full-time job offer waiting for him after release, back at Lugano's Restaurant, where he had worked diligently while on pre-trial release prior to his incarceration in this case.

After Aiden spent a month alone in a *high-security USP*, hundreds of miles from any family, one wonders how much more deterrence is truly needed, in the form of any lengthy remaining term of imprisonment.  Aiden's activities on January 6 were surely no worse than, and his risks of recidivism seem dramatically lower than, every single one of these cited defendants sentenced since – Bruno Cua, William Isaacs, or Alex Sheppard.  Stated simply, Aiden does not need a prison sentence that is 21, 28 or 40 months longer than the sentences those defendants received after this Court sentenced Aiden.  This Court did not know then, but it now knows what those other comparable defendants received, and the instant motion provides this Court with an opportunity to factor in those sentences when issuing a revised sentence for Aiden that will be just and also appropriate under the Sentencing Commission's newly revised Guidelines.

## CONCLUSION

Pursuant to 18 U.S.C. § 3582(c)(2), and based upon the Sentencing Commission's Amendments 821 and 825, and their 2-level offense level decrease retroactively applicable to defendants, such as Aiden Bilyard, who had zero criminal history points at the time of their sentencings, this Court should grant this motion, reduce Aiden Bilyard's Sentencing Guideline range to 36-47 months, and then grant a sizeable downward variance that is consistent with Aiden's post-sentence rehabilitation, and proportionate with all other similarly-situated young

January 6 offenders.  A revised sentence should be made effective on or after February 1, 2024.

      This 6th day of November, 2023.     Respectfully submitted,

      /s/ Gregory S. Smith
      Gregory S. Smith
      DC Bar No. 472802
      Law Offices of Gregory S. Smith
      913 East Capitol Street, SE
      Washington, DC 20003
      (202) 460-3381
      (202) 330-5229 (Fax)
      gregsmithlaw@verizon.net
      *Attorney for Aiden Bilyard*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing is being served on counsel for all parties through this Court's ECF system.

This 6th day of November, 2023

      By:    /s/ Gregory Smith
           Counsel for Aiden Bilyard